## AKEN v. BULLARD et al.

A petition by a plaintiff who seeks to reform a deed executed twenty-three years prior to the institution of his suit, on the ground of mutual mistake of the parties as to the meaning and effect of the terms of the deed, wherein the plaintiff's knowledge of the terms of the deed at the time of its execution is not negatived, nor any reason given as an impediment to an earlier prosecution of his claim, or to excuse his laches, is properly dismissed on demurrer.

JUNE 23, 1910.

Equitable petition. Before Judge Lewis. Jasper superior court. August 17, 1909.

In 1872 the will of James Aken was duly admitted to record. He devised a certain tract of land to his grandchildren, Ransom H. Aken and Ellen Geiger, to be equally divided between them. The devise to R. H. Aken was in fee simple, and that to Ellen Geiger was in fee, defeasible upon her death without issue, with limitations over in that event to the other devisees in the will. Prior to his death James Aken had indicated how he wished the land divided between R. H. Aken and Ellen Geiger, and had put· R. H. Aken in possession of that half which he desired him to have. . In 1885 R. H. Aken and Ellen Geiger (who had intermarried with one Pendergrass) executed to each other their respective deeds intended to carry into effect an agreement of partition between them in ratification of the division as indicated by their grandfather. The deed from the plaintiff to Ellen Pendergrass recited for its consideration the partition of the land, and purported to convey the land therein described to Ellen Pendergrass in fee simple, with warranty of title. On February 23, 1885, Ellen Pendergrass, upon a consideration of $275, conveyed to J. H. Bullard her life-estate in the land described in the partition deed; and subsequently, on March 18, 1899, she conveyed by deed to J. H. Bullard a fee-simple title to the same land. Copies of both

deeds were attached to the petition, and it appeared that both had been recorded, the former on February 2, 1886, and the latter on March 24, 1899. In 1908 R. H. Aken brought a petition against Ellen Pendergrass and J. H. Bullard, alleging the foregoing facts, and further alleging: that the deed from plaintiff to Ellen Pendergrass failed to carry out the intention of the parties thereto; that instead of the words "forever in fee simple," which were inserted therein, the words, "to be held under the limitations and conditions in the will of James Aken," should have been inserted, and the failure to insert these words was the result of an accident and a mutual mistake under which each party labored as to the meaning of the terms used in the deed; that at the time Bullard obtained the deed from Ellen Pendergrass, purporting to convey the fee-simple estate described in the deed from plaintiff to Ellen Pendergrass, he well knew that the deed under which Ellen Pendergrass held the land was merely a deed of partition, and that she did not claim any greater interest in the land than that which she acquired under the will of her grandfather, and he well knew the purpose for which the deed from plaintiff to Ellen Pendergrass was executed, and that it was not the intention of either of the parties to the deed that the paper should have the effect of a release by plaintiff to Ellen Pendergrass of any interest in the land contingent upon her dying childless; and that Ellen Pendergrass had no children, and is now 65 years of age, and in the event of her death without children the plaintiff is one of the devisees under the will of his grandfather who was to share in the land devised to Ellen Pendergrass upon the contingency of her death without children. The prayer was for the reformation of the deeds, and for general relief. The court dismissed the petition on general demurrer, and this judgment is now under review.

*A. S. Thurman* and *Cobb & Erwin,* for plaintiff.

*Greene F. Johnson,* for defendants.

EVANS, P. J. (After stating the foregoing facts.) The doctrine of laches is founded upon the maxim "vigilantibus non dormientibus subveniunt leges." It rests on reasons of public policy, and its aim is intended for the repose of society by discouraging the assertion of antiquated claims. "The principle upon which courts of equity proceed in such cases," says Judge Nisbet, "is that the lateness of the demand, arising from lapse of time, is pre-

sumptive evidence against its justice." *Akins* v. *Hill*, 7 *Ga.* 573. Equity will relieve against mutual mistake, but only at the instance of a complainant who moves with reasonable diligence. What is a reasonable time must necessarily depend upon the peculiar facts and environments of the particular case. The deed asked to be reformed was executed twenty-three years before the institution of the suit to reform it. The petition does not disclose the name of the scrivener, nor is it negatived therein that the plaintiff knew of the precise terms of the deed from the date of its execution. He alleges that Bullard knew of the mistake at the time he took his second conveyance from Mrs. Pendergrass in 1899. This deed was spread upon the public records a day or two after its execution and yet the plaintiff waited more than nine years before he aroused himself from lethargy. No excuse is given for the plaintiff's long delay. The witnesses to the partition agreement may be dead; the scrivener may have passed away, for aught that appears in the deed. The memory of the parties may be dimmed after the lapse of a quarter of a century. It is incumbent on the plaintiff, in order to repel the presumption of unreasonable delay, to allege in his petition the impediments to an earlier prosecution of his claim. 12 Enc. Pl. & Pr. 834. This was not done. The laches of the plaintiff is so palpable from the petition that its dismissal on demurrer was proper. *Cloud* v. *Glass*, 120 *Ga.* 51 (47 S. E. 505); *McWhorter* v. *Cheney*, 121 *Ga.* 541 (49 S. E. 603); *Basch* v. *Frankenstein*, ante, 518 (68 S. E. 75).

*Judgment affirmed.   All the Justices concur.*